IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   v.<br><br>ISMAEL DELGADO-CELIS,<br><br>   Defendant. | CASE NO.: 2:24-cr-9 |

**O R D E R**

The Government filed a Motion in Limine asking the Court to preclude Defendant from introducing any improper or irrelevant evidence at trial regarding affirmative defenses of duress, coercion, justification, or necessity.  Doc. 44.  Defendant filed a Response.  Doc. 49.  The Government filed a second Motion in Limine asking the Court to direct Defendant to provide ahead of trial any challenges to the accuracy of the English transcript of his recorded interview with law enforcement.  Doc. 45.  I conducted a hearing on these Motions on April 14, 2025.  Doc. 53.

For the following reasons, I **DENY in part** the Government's Motion related to affirmative defenses.  The Government's request to preclude Defendant from offering any testimony about UI's threats is denied.  If the Government argues that Defendant's deliberate ignorance is proof of his knowledge that the package contained controlled substances, then Defendant shall not be permitted to argue that UI's threats undermine the Government's ability to establish Defendant's knowledge.  Further, Defendant shall not be permitted to make argument in support of the affirmative defense of duress and coercion, and the jury should not be

given an instruction on the affirmative defense. I also **DENY as moot** the Government's Motion regarding the transcript and translation.

## DISCUSSION

Defendant has been charged with one count of possession and attempt to possess with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docs. 1, 30. The Honorable Lisa Godbey Wood has set this matter for jury selection and trial beginning on April 22, 2025. Docs. 37, 51.

I. **Defendant Is Permitted to Offer Testimony About UI's Threats, but Defendant Shall Not Make Argument in Support of the Affirmative Defense of Duress and Coercion, and the Jury Should Not Be Instructed on That Affirmative Defense**

   A. **The Parties' Arguments**

In its initial Motion, the Government states it is unsure whether Defendant intends to raise an affirmative defense of coercion, duress, justification, or necessity at trial. Doc. 44 at 1. However, to the extent Defendant intends to do so, the Government states Defendant must meet the requirements of United States v. Amede and United States v. Deleveaux and must do so outside the presence of the jury. Id. at 1, 5–6. Defendant states he has never raised an affirmative defense, and he does not intend to do so. Doc. 49.

At the hearing, it became apparent that the parties' disagreement arises from Defendant's expected testimony at trial. The Government believes Defendant's expected testimony can only be used to support an affirmative defense of duress and coercion, and the Government contends Defendant cannot meet the minimum requirements for a duress and coercion defense.[1]

---

[1] The Government's brief suggests Defendant might raise any one of the defenses of coercion, duress, justification, or necessity. The parties' presentations at the hearing demonstrated that duress and coercion are relevant legal theories. Moreover, "modern cases have tended to blur the distinction" between these defenses. Pattern Crim. Jury Instr. 11th Cir. SI S16, Duress and Coercion (Justification or Necessity), Annotations and Comments (2024) (quoting United States v. Bailey, 444 U.S. 394, 402

Defendant, on the other hand, states unequivocally that he is not asserting an affirmative defense. Instead, Defendant contends his expected testimony will only be used to show that he lacked the requisite knowledge and intent to commit the charged offense. Defendant also argues that his expected testimony will be used to explain why he lied to law enforcement during a custodial interview. To assess these competing arguments, it is important to describe the charge and Defendant's expected testimony.

### B. Charges and Defendant's Expected Testimony

Defendant has been charged with one count of possession and attempt to possess with intent to distribute a controlled substance (methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Although the parties have presented limited information about the facts underlying the charge, it appears that a package was sent to Defendant's home, and the package contained a large quantity of methamphetamine.

At the April 14, 2025 hearing, Defendant's counsel stated that Defendant expects to testify at trial. Defendant's counsel made a proffer as to what she expects Defendant's testimony will be. Defendant is expected to testify that an unidentified individual (referred to here simply as "UI") approached Defendant about receiving a package.[2] At that time, Defendant had known UI for a long time.

UI and Defendant had at least two in-person conversations about the package.[3] During the first conversation on September 10, 2024, UI told Defendant that a package would be

---

(1980)). Accordingly, for convenience, I refer simply to the affirmative defense of duress and coercion for the remainder of this Order.

[2] Although UI's name was not disclosed in the parties' briefs or during the hearing, counsel for both sides assured the Court that they agree about UI's identity.

[3] The Government contends that Defendant and UI exchanged text messages during the days

3

delivered to Defendant's home and at least one other person—maybe more—would come take the package from Defendant. This conversation occurred two days before the package arrived.

The next day, September 11, 2024, at some time after 10:00 p.m., Defendant and UI had a second conversation. During the second conversation, UI told Defendant that the package would arrive the following day. UI also threatened Defendant. UI told Defendant that if he (Defendant) did anything with the package, refused to accept the package, informed the police, or failed to do what he was told, Defendant and his family in Mexico could be killed. UI did not tell Defendant what was inside the package. Defendant received the package on September 12, 2024, the day after the second in-person conversation.

Defendant is expected to testify that he had known UI for a long time, knows of UI's "connections," and, based on his experience with UI, UI's threats were real and credible. Defendant is expected to testify that if he did not comply with the threats he and his family would be killed. Defendant is expected to testify that UI is part of an organization that routinely participates in violence. Defendant is expected to testify that he had no reasonable opportunity to inform the police. Defendant is also expected to testify that he is present in the United States illegally, which further discouraged him from informing law enforcement.

Defendant was arrested and interviewed by law enforcement officials the day the package was delivered on September 12, 2024. During the custodial interview, Defendant initially disclaimed any knowledge of the contents of the package. However, after some questioning,

---

leading up to the delivery and those text messages do not contain any threatening language from UI. The Government contends the text messages suggest that Defendant and the UI were cordial to one another and that Defendant was a knowing and willing recipient of the package. It does not appear that Defendant disputes that the text messages occurred. Defendant, however, focuses on the two in-person conversations.

Defendant eventually changed his answers, admitted to knowing that the package contained illegal narcotics, and stated that he intended to distribute those narcotics.

Defendant is expected to testify that his statements to law enforcement during the custodial interview were untruthful and that he did not actually know about the contents of the package and had no intention of distributing any narcotics. Defendant is also expected to testify that he lied to law enforcement because he was afraid to tell the whole truth because of UI's threats.

### C.   The Parties' Additional Arguments at the Hearing

At the hearing, the Government expanded on the arguments made in its Motion, arguing that Defendant's expected testimony is, essentially, an affirmative defense of duress and coercion. As a result, the Government contends that Defendant should be required to establish the threshold requirements for an affirmative defense and, if Defendant is unable to do so, should be precluded from introducing any evidence of a threat from UI. Additionally, the Government argued that if Defendant's expected testimony is relevant for some other purpose—i.e., not to support an affirmative defense—then it would likely confuse the jury and, therefore, should be excluded under Federal Rule of Evidence 403.

Defendant elaborated on his arguments, too. Defendant argued that he has no intention of invoking any affirmative defense. In Defendant's view, he would only assert an affirmative defense of duress if he conceded that he acted with the requisite intent and knowledge—but he will not concede those facts. Instead, Defendant contends his expected testimony will be used for two other purposes (i.e., purposes other than a defense of duress and coercion). First, Defendant argues that his expected testimony will be offered to explain why he did not know about the contents of the package—namely, that he was directed to not look in the package and

was threatened with physical harm if he failed to comply. In Defendant's view, his testimony about threats will be used to undermine the Government's ability to show that Defendant acted with the necessary intent or knowledge, an essential element of the offense. Second, Defendant argues his expected testimony about UI's threats will be used to explain why he lied to law enforcement during the custodial interview. Defendant maintains that this second use of the expected testimony is not for the purposes of any affirmative defense and does not go to an essential element—instead, it merely explains why Defendant lied during the interview. Finally, in responding to the Government's Rule 403 argument, Defendant argues a limiting instruction to the jury will be sufficient to mitigate any juror confusion. Defendant's counsel argued—in the alternative—that if the Court concludes that Defendant's expected testimony does constitute an affirmative defense, then Defendant can satisfy the threshold requirements for admissibility of that evidence and Defendant would be entitled to a jury instruction on the affirmative defense.

### D. Essential Elements of the Charge and Requirements of the Affirmative Defense

To resolve this dispute, it is helpful to compare the essential elements the Government must prove at trial with the affirmative defense of duress and coercion. Under § 841(a)(1), it is unlawful for any person to "knowingly or intentionally" possess with intent to distribute a controlled substance. Under § 846, a person who attempts to commit such an offense is subject to the same penalties as those prescribed for the substantive offense. "'A conviction for attempt require[s] proof only that [the defendant] possessed the mens rea required for the underlying crime and took a substantial step toward the commission of that crime.'" United States v. Amede, 977 F.3d 1086, 1099 (11th Cir. 2020) (quoting United States v. Evans, 358 F.3d 1311, 1312 (11th Cir. 2004)). Due process requires the government "to prove beyond a reasonable doubt every element of the charged criminal offense[s]." United States v. Deleveaux, 205 F.3d

1292, 1298 (11th Cir. 2000) (citation omitted). If a defendant asserts a defense that has the effect of negating any element of the offense, the government must disprove that defense beyond a reasonable doubt. Id.

The affirmative defense of duress and coercion requires a defendant to prove the following four requirements by a preponderance of the evidence: (1) "That there was an unlawful and present, immediate, and impending threat of death or serious bodily harm to the Defendant or another"; (2) "That the Defendant's own negligent or reckless conduct did not create a situation where the Defendant would be forced to engage in a crime"; (3) "That the Defendant had no reasonable legal alternative to violating the law"; and (4) "That avoiding the threatened harm caused the criminal action." Pattern Crim. Jury Instr. 11th Cir. SI S16, Duress and Coercion (Justification or Necessity) (2024); Amede, 977 F.3d at 1102 (discussing required elements of defense). "The defense of duress or necessity 'does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary mens rea was present.'" Pattern Crim. Jury Instr. 11th Cir. SI S16, Duress and Coercion (Justification or Necessity) (2024), Annotations and Comments (quoting Dixon v. United States, 548 U.S. 1, 6 (2006)). In order for a defendant have an affirmative duress and coercion defense submitted to the jury, the defendant must "first produce or proffer evidence sufficient to prove the essential elements of the defense." Amede, 977 F.3d at 1102 (citing United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985)).

### E. Analysis: Admissibility of Defendant's Expected Testimony and Permissible Argument and Jury Charges

With these principles in mind, I now address whether Defendant should be precluded from testifying at trial about UI's purported threats. The Government contends Defendant's expected testimony would only be relevant to proving an affirmative defense of duress or coercion. I reject that contention. Defendant has articulated at least one valid alternative basis for introducing his expected testimony: to explain why he lied to law enforcement during the custodial interview. Defendant is expected to testify that he falsely admitted to knowing the contents of the package and falsely stated that he to intend to distribute the drugs in the package, all because UI threatened Defendant and his family if Defendant informed police. Defendant's statements to law enforcement during that interview will likely be important at trial. Defendant's sole apparent explanation for his lies is his fear of retaliation from UI. As a result, Defendant's expected testimony is certainly relevant—indeed, highly relevant—to the statements he made during the custodial interview.

The Government has not argued (or shown) that Defendant's expected testimony would be irrelevant to Defendant's untruthfulness to law enforcement. Instead, the Government argued that even if Defendant's testimony about UI's threat is relevant for a purpose other than an affirmative defense, admission of the testimony would confuse the jury. Consequently, the Government argued the Court should exclude the testimony under Federal Rule of Evidence 403. The Government's Rule 403 argument is unconvincing.

Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of confusion of the issues . . . ." Here, Defendant's expected testimony will likely be highly probative. The Government will undoubtedly seek to bind Defendant to his statements made to law enforcement during his custodial interview. As the

8

record stands now, it appears that Defendant has only one explanation for those statements: he lied because he was scared of UI. Without being allowed to introduce his testimony, Defendant would likely not be able to dispute or explain his own prior statements to law enforcement. Of course, it is up to the jury whether Defendant's expected testimony is credible, but it is clear that the testimony—if it follows Defendant's counsel's proffer—will be highly probative.

In terms of "confusion of the issues," the Government has rightly identified a risk of some confusion. If Defendant is allowed to testify about UI's threats, but not permitted to assert an affirmative defense of duress or coercion, the jury may incorrectly rely on Defendant's testimony as a sufficient excuse for his actions. While this presents some risk of confusion, the Government has not shown that the probative value of Defendant's expected testimony is "substantially outweighed" by the danger of confusion, particularly given the highly probative nature of Defendant's expected testimony. To the extent there is some risk of confusion, the Court can provide a limiting instruction to the jury about the nature of Defendant's testimony and how that testimony can be used.

At the hearing, the Government cited two cases to support its Rule 403 argument: United States v. Moreno, 102 F.3d 994, 998 (9th Cir. 1996), and United States v. Alvear, 181 F. App'x 778, 782 (11th Cir. 2006). I have considered those cases, but neither supports exclusion of Defendant's expected testimony under Rule 403.

The first case, Moreno, is distinguishable. In Moreno, the defendant claimed he was threatened and coerced into transporting drugs for another individual. The lower court concluded that the defendant had not presented sufficient evidence to support a prima facie case of the affirmative defense of duress and precluded him from testifying about the threats. The Ninth Circuit affirmed, recognizing that the defendant's testimony "related solely" to an

affirmative defense of duress that the defendant was not allowed to pursue. In other words, the defendant's testimony about threats was not relevant to any other issue in the case. In contrast, here, Defendant's expected testimony about UI's threats is highly probative of another matter—Defendant's untruthful statements to law enforcement. Furthermore, Moreno only mentions Rule 403 in passing, noting that evidence that is not relevant or confusing can be precluded. There is no indication that the lower court or the Ninth Circuit relied on Rule 403 in its analysis. In sum, Moreno does not suggest Defendant's expected testimony should be precluded.

The second case, Alvear, is also distinguishable. In Alvear, the defendant attempted to testify that he transported drugs from Ecuador to the United States because he believed that if he did not his family would be harmed. 181 F. App'x at 782. As in Moreno, the defendant in Alvear failed to present sufficient evidence to support a prima facie case of the affirmative defense of duress, and the court precluded him testifying about his fear that his family would be harmed. Despite the ruling, the defendant still attempted to introduce the testimony at trial, and the prosecution objected. The trial court sustained the objection and precluded the defendant from testifying about any threats, but the court allowed the defendant to testify that "he had not wanted to transport the drugs, that he did not want to break the law, that he had intentionally acted in a manner that he believed would raise suspicion by customs officials, that it was never his intention to deliver the drugs to a trafficker in the United States, and that he actually 'delivered himself' to customs authorities." Id. On appeal, the defendant argued that he should have been allowed to introduce evidence of the threats to negate his specific intent to commit the offense (rather than to support an affirmative defense of duress). The Eleventh Circuit rejected the argument, concluding the defendant had never made the argument to the trial court and did not preserve the issue for appeal. In dicta, the court observed that if the issue had been

10

preserved, the trial court could have excluded the testimony under Rule 403 because evidence of the threats "might have confused the issues and misled the jury into believing that [the defendant's] actions could be excused because of duress." Id. Importantly, Alvear did not consider whether evidence of threats should be excluded with the evidence is highly probative to a separate issue, like Defendant's untruthful statements to law enforcement.[4] Thus, Alvear provides little guidance on the dispute presently before the Court.

Ultimately, the Government has not shown that the probative value of Defendant's expected testimony is "substantially outweighed" by the danger of confusion. Moreover, the risk of confusion can be mitigated by a limiting instruction. Accordingly, Defendant's expected testimony should not be excluded under Rule 403.

The analysis above demonstrates that Defendant's expected testimony concerning UI's threats should not be entirely excluded, but that does not end the inquiry. I must still address the proper use of that expected testimony and whether that use impacts the jury instructions. The parties have devoted much of their attention to whether Defendant's expected testimony effectively constitutes an affirmative defense of duress and coercion or is merely an attack on the intent and knowledge requirements of the offense. I address that distinction now.

Defendant argues that he intends to offer testimony about UI's threats to undermine the Government's showing that he (Defendant) knew about the contents of the package. Defendant's argument assumes that the Government must show that Defendant had *actual* knowledge of the contents of the package beyond a reasonable doubt. But the Government does not rely only on actual knowledge. The Government has also asked the Court to instruct the

---

[4] Notably, in Alvear, the trial court judge recognized that evidence of the threats against the defendant "may be appropriate" (i.e., admissible) if the evidence was offered "for some other reasons." Alvear, 181 F. App'x at 781. Even so, the defendant did not articulate any "other reason" for the introduction of the evidence. Id.

11

jury on deliberate ignorance.[5]   Doc. 43 at 38.   The requested deliberate ignorance charge, based on the Eleventh Circuit Pattern Charge, states:

> If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed—unless the Defendant actually believed the fact didn't exist.
>
> "Deliberate avoidance of positive knowledge"—which is the equivalent of knowledge—occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he can deny knowledge of the package's contents.
>
> So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the Defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed his eyes.
>
> But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew about the possession of the controlled substance.

Id.   Thus, the Government presumably intends to argue that Defendant actually knew the package contained controlled substances, or, alternatively, that Defendant had every reason to know the package contained controlled substances but deliberately closed his eyes.

Defendant's expected testimony could arguably be used to undermine the Government's showing that he had *actual* knowledge of the contents of the package.   But the expected testimony does not undermine the Government's showing of deliberate ignorance.   Defendant is expected to testify that UI directed Defendant not to open the package and he followed that instruction, which explains why Defendant did not know the contents of the package. Defendant's expected testimony does not undermine the Government's showing of deliberate ignorance; Defendant's expected testimony is consistent with deliberate ignorance but asks the jury to excuse that ignorance due to the threats.   In other words, nothing about Defendant's

---

[5]   Defendant opposes the Government's request for a charge on deliberate ignorance.   Doc. 47 at 2–3.

12

expected testimony will undercut the "high probability" that the package contained controlled substances or that Defendant "deliberately closed his eyes" to that fact. Instead, Defendant will ask the jury to excuse his deliberate ignorance because UI's threats compelled Defendant to remain ignorant. Because Defendant's expected testimony is consistent with, and does not undermine, deliberate ignorance and merely asks the jury to excuse that ignorance, the expected testimony effectively constitutes an affirmative defense of duress and coercion. Cf. United States v. Hoa Quoc Ta, No. 1:05-CR-094-01, 2007 WL 2310113, at *1 (N.D. Ga. Aug. 9, 2007) (allowing the defendant to introduce evidence of duress and coercion to negate the intent element of the offense, even though the defendant did not satisfy the elements required for a duress defense, because the defendant asserted a defense that he was merely present while the crimes were committed, but he did not participate or aid in their commission). Therefore, Defendant must satisfy the threshold requirements for asserting the affirmative defense of duress and coercion.

In order to present a duress and coercion defense to the jury, Defendant must first produce or proffer evidence to prove the following elements: (1) he "acted under an immediate threat of death or serious bodily injury"; (2) he "had a well-grounded fear that the threat would be carried out"; and (3) he "had no reasonable opportunity to escape or inform the police."[6] Amede, 977 F.3d at1102 (cleaned up) (citing United States v. Montgomery, 772 F.2d 733, 736 (11th Cir. 1985); United States v. Wattleton, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002); and United States v. Lee, 694 F.2d 649, 654 (11th Cir. 1983)). The first requirement—immediate

---

[6] There is some disparity between the required elements for a duress and coercion defense under the Eleventh Circuit Pattern Jury Instructions, S16, and caselaw like Amede, 977 F.3d at 1086. The distinction is immaterial for the purposes of this Order, given that two of the elements are largely the same: "immediate threat" and reasonable legal alternatives/reasonable opportunity to escape or inform law enforcement. The resolution in this Order turns on these two common elements.

threat—is a "rigorous one, and it is clear that fear of future bodily harm . . . will not suffice." United States v. Foster, 153 F. App'x 674, 676–77 (11th Cir. 2005) (citing United States v. Sixty Acres in Etowah Cnty., 930 F.2d 857, 861–62 (11th Cir.1991)).  Similarly, "the apprehension of immediate danger must continue the whole time the crime is committed."  Id.

The third requirement is also demanding: "A defendant seeking to assert a defense of duress must have taken *any* reasonable opportunity that he had during the commission of the crime to inform police or other authorities."  Alvear, 181 F. App'x at 781 (emphasis in original) (citing United States v. Lee, 694 F.2d 649, 654 (11th Cir. 1983)); see also Amede, 977 F.3d at 1102 (noting that "subjective and general lack of faith in law enforcement, with no supporting evidence, is insufficient").  For the third element, the defendant is required to "either communicate [his] knowledge to police, or attempt to remove [himself] from the scene of illegal activity."  United States v. Harris, 7 F.4th 1276, 1292–93 (11th Cir. 2021) (citing Sixty Acres, 930 F.2d at 860).

Defendant has not met his burden to produce or proffer evidence to prove each requirement of the affirmative defense of duress and coercion.  On the first requirement, Defendant has not shown that he was under an "immediate threat of death or serious bodily injury."  At the hearing, Defendant proffered that UI threatened him the night before the package arrived at Defendant's home.  There is no indication that UI remained present at Defendant's home on the night of the threat or that UI ever hurt or attempted to hurt Defendant. At most, Defendant proffered that UI would inflict future bodily harm if Defendant did not comply with UI's instructions.  It is well established that future harm is not sufficient to show an immediate threat.

Defendant also fails to establish the third requirement for an affirmative defense of duress and coercion: Defendant had no reasonable opportunity to escape or inform the police. Defendant is expected to testify that UI spoke to him on September 10, 2024, about the package, then spoke to him again on the night of September 11, 2024 (at which point UI threatened Defendant), and the package arrived sometime on September 12, 2024.   Therefore, Defendant had the remainder of September 11, 2024, and the morning of September 12, 2024, to inform law enforcement of the threats, but he failed to do so.[7]   Additionally, Defendant was arrested on September 12, 2024, and still failed to inform law enforcement about UI's threats.   Even if Defendant had a "general lack of faith in law enforcement," that would not excuse his failure to notify law enforcement about the threats against him.   Defendant has failed to show he had no reasonable opportunity to escape or inform the police about UI's threats and, therefore, has not made the threshold showing for asserting the affirmative defense of duress and coercion.

For these reasons, I **DENY in part** this portion of the Government's Motion.   The Government's request to preclude Defendant from offering any testimony about UI's threats is denied.   If the Government argues that Defendant's deliberate ignorance is proof of his knowledge that the package contained controlled substances, then Defendant shall not be permitted to argue that UI's threats undermine the Government's ability to establish Defendant's knowledge.   Further, Defendant shall not be permitted to make argument in support of the

---

[7]   At the hearing, the Government proffered that UI sent Defendant a text message that directed Defendant to keep his phone turned on on September 12, 2024, and Defendant responded telling UI that he had to turn his phone off that day because he (Defendant) had to attend court on the morning of September 12, 2024.   It appears that this fact is undisputed and, if so, would further support the notion that Defendant had a reasonable opportunity to escape or inform law enforcement about UI's threats on the morning of September 12, 2024.   However, Defendant did not directly address this fact, and it is unclear if the Court should consider the Government's opposing proffer about Defendant's ability to establish the threshold requirements for the affirmative defense of duress and coercion.   Therefore, I give this fact no consideration.

15

affirmative defense of duress and coercion, and the jury should not be given an instruction on the affirmative defense.

### F. Analysis: Jury Nullification

The Government also argues that Defendant cannot present a valid legal defense to the §§ 841 and 846 charges and, therefore, any attempt to bring in any evidence or argument justifying his actions would result in jury nullification. Doc. 44 at 6. In response, Defendant states he has no intention or need to produce evidence that could lead to jury nullification, as he has a legal defense to the charged offenses. Doc. 49 at 2.

A "'jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence.'" United States v. Riquene, No. 3:10-cr-227, 2012 WL 171080, at *7 (M.D. Fla. Jan. 20, 2012) (quoting United States v. Funches, 135 F.3d 1405, 1408–09 (11th Cir. 1998)). In other words, a defendant cannot make any argument "encouraging the jury to use its 'de facto power to refuse to apply the law as instructed by the court [and] exercise . . . such power in dereliction of the jury's sworn duty.'" United States v. Thompson, 253 F.3d 700 (5th Cir. 2001) (quoting Funches, 135 F.3d at 1408); United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.")). "'A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification . . . .'" Id. (quoting United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993)).

Considering the record as it stands, nothing before the Court suggests Defendant's expected testimony or argument concerning that testimony will encourage the jury to refuse to

apply the law as instructed by the Court. As explained above, Defendant may testify about UI's threats because that testimony is relevant to explaining why Defendant lied to law enforcement during the custodial interview. Defendant is not permitted to make argument about the affirmative defense of duress and coercion, and the jury should not be instructed about that affirmative defense. The Court may, if appropriate, issue a limiting instruction to avoid any improper consideration of Defendant's expected testimony and, thus, avoiding any confusion or the risk of jury nullification. Additionally, the jury instruction that will be given in this case will almost certainly include a directive that the jury follow the law as the Court explains it, further mitigating any risk of jury nullification. Thus, I **DENY** this portion of the Government's Motion in Limine.

## II.     Defendant Does Not Contest the Accuracy of the Transcript

The Government represents that it produced to the defense on March 26, 2025, a draft translation of Defendant's Spanish-language recorded interview with law enforcement, as well as an edited and final transcript that it intends to introduce in evidence at trial. At the hearing, counsel confirmed that they conferred about the transcript and agreed upon a final, complete version of the transcript for use at trial. Based on these representations, the Court **DENIES as moot** the Government's Motion. This serves as a written memorial of my oral ruling at the hearing.

## CONCLUSION

For these reasons, , I **DENY in part** the Government's Motion related to affirmative defenses. The Government's request to preclude Defendant from offering any testimony about UI's threats is denied. If the Government argues that Defendant's deliberate ignorance is proof of his knowledge that the package contained controlled substances, then Defendant shall not be

17

permitted to argue that UI's threats undermine the Government's ability to establish Defendant's knowledge. Further, Defendant shall not be permitted to make argument in support of the affirmative defense of duress and coercion, and the jury should not be given an instruction on the affirmative defense. I also **DENY as moot** the Government's Motion regarding the transcript and translation.

**SO ORDERED**, this 18th day of April, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA